M. G. Pope *v.* John Terry's Ex'r and City of Louisville.
S. C. Hepburn *v.* Same.

**Highway—Street Improvement—Assessment—Damages to Adjoining Property by Improvement.**

Where a grantor conveys to a turnpike company a right of way, the consideration being the improvement of grantor's property by the building of a turnpike, and the further fact that grantors should be allowed to travel thereon without paying toll, and afterwards said turnpike becomes a city street, the contract between the grantor and the company does not so bind the public as to exempt her heirs and vendees from paying assessments for improving such street.

**Damages.**

In a cross-petition for damages against the contractor and city, where it is not averred that the street has been so constructed or the work so done as to cause the water to flow over her lands, no cause of action is stated.

APPEAL FROM LOUISVILLE CHANCERY COURT.

February 23, 1875.

Opinion by Judge Lindsay:

The principal ground of defense relied on in these two causes is that Baxter avenue is not a "public way" within the meaning of that term as used in Sec. 12 of the city charter. It certainly is a road or public highway. It is within the corporate limits of the city. It is by the express language of said section subject to the management and control of the city, provided the right to manage and control it can be exercised without an invasion of some private right. The purchase from the turnpike company invested the city with the title to the road or highway as against that corporation. It only remains to be determined whether Merton's heirs have any such interest in, or title to the roadbed as precludes the city government from managing, controlling and improving said avenue pursuant to the provisions of the city charter.

Mrs. Caroline H. Preston, by deed of conveyance, regularly executed and delivered on March 26, 1832, granted, bargained and

sold to the Louisville Turnpike Company "the right and privilege and fee" to the strip of sixty, feet of ground upon which it subsequently constructed its road. The consideration for the conveyance was one dollar in hand paid and the advantage the construction of the turnpike road would be to the grantor's lands. This conveyance has since been repeatedly recognized by the heirs of Mrs. Preston, who have claimed and accepted all the advantages accruing to them from the conditions of the grant, including that of an alleged oral agreement that they should be allowed to pass and repass upon the road without the payment of toll. We will not stop to inquire as to the exact nature of the estate the company acquired in the road-bed by virtue of this conveyance. It certainly did acquire for the benefit of itself, and its lawful successors, a use in and a right of way over the land, to be held and enjoyed forever, or so long as the use or right of way should be devoted to the purposes of a public highway. The city is the lawful successor of the turnpike company. It is now devoting and it purposes for all time to come to devote the strip of ground to the purpose for which it was granted. It has merely .exercised the right of transforming a turnpike road into a street, over which Preston's heirs and all other persons are allowed to pass without the payment of toll. The city, in the exercise of an expressly delegated power, purchased from the turnpike company its use in, or right of way over this ground. If the company had refused to sell, the city would have had the power and authority to acquire title by the condemnation of such estate in the lands as was held and owned by the turnpike company. Sec. 10, City Charter.

The city was not bound to purchase, nor would it have been compelled to condemn any greater estate than was necessary for the accomplishment of its ends. A use in the lands is all that is requisite, and, therefore, if it be true, as matter of law (a question which we do not decide), that the fee remains in Preston's heirs, still the city holds such an estate in the land as to authorize it to manage, control and improve Baxter avenue, as other public ways are managed, controlled and improved under the provisions of its charter. The duty imposed upon the turnpike company by the 12th section of its act of incorporation, of keeping its road in repair, was intended for the public good, and not for the benefit of those grantees, who might be induced to grant to it the right of way. The city has now undertaken the performance of this duty, and is proposing to provide for the payment of the expense thereby incurred in the manner prescribed by the 12th section of its charter. The contract

between the turnpike company and Mrs. Preston does not so bind the public as to exempt her heirs and vendees from the burdens imposed upon property holders in the .city for the improvement, reconstructing and the keeping in repair the public streets upon which their property binds.

So soon as the city, in the exercise of its power, acquired title to the turnpike road, and converted it into a street, every person owning real property constituting part of any quarter-square binding on such street, became at once liable to be assessed for the cost of any improvement that the city might deem it necessary and proper to make in the original construction, or in the reconstruction of the new public way.

Mrs. Pope made her answer a cross-petition against the contractor and the city, and asked a judgment for damages upon an alleged counterclaim growing out of the manner in which Baxter avenue had been improved. "She says that plaintiff making the improvement of Baxter avenue so constructed it so that all of the surface matter running on said avenue from the intersection of Broadway and Baxter avenue south, and from the city limits north, will empty into and run through that part of her lot which lies next to the Newbury turnpike." She then describes the manner in which the water runs through her land, the difficulty of controlling it, and her inability to protect her property against its alleys. She claims that "she has already been injured at least $1,000 by said surface water, which has been thrown upon her lands as aforesaid."

Terry's representatives demurred to this cross-petition so far as it sought relief against them, and their demurrer was sustained. The city answered, and upon final hearing the cross-action against it was dismissed without prejudice. The cross-petition as to Terry's executors was fatally defective. Although it is alleged that the improvement was so constructed as that the surface water running from the intersection of Broadway on the south, and the city limits on the north "will run through" Mrs. Pope's lands, it is not alleged that the street has been so constructed or the work so done as to cause the water to flow upon her lands. The cross-petition does not show that the grade of the turnpike road has been altered so as to change the flow or increase the volume of the surface water, nor that anything done by the contractor or by the city has caused one drop of water to flow over appellants' land, that would not have flowed over it if the work had not been done.

Mrs. Hepburn sets up the same character of cross-action.  She

says that the street is so constructed that certain surface water "will empty into and run across her aforesaid land," to her great damage, etc., and that the improvement now causes all the water on Baxter avenue to run on and through her land. Her cross-petition, like that of Mrs. Pope, is defective, and the demurrer of Terry's executors was properly sustained. The cross-actions attempted to be asserted against the city, even if its answers cure the defects in the cross-petitions, are not germaine to these proceedings. Appellants do not set up a state of facts showing that they have joint causes of action against the contractor and the city; therefore a judgment against the city could not be set off against either of the contractor's claims. Besides, the proof shows that if either appellant has sustained damage, it is a consequential injury resulting from the work itself, and not from the manner of its execution. It shows further that if any such damage has been sustained, it results in part from the grading and passing of East Broadway street in Henning's and Speed's Highland addition. Neither the cross-petitions nor the proof can be regarded as making out against the contractor a claim to damages in behalf of either of appellants. There is still another reason why these claims should not have been asserted in these actions. They are for unliquidated damages, which ought in all cases to be assessed by a jury. The chancellor should not undertake to settle such questions in any state of case unless they are so intimately connected with the subject-matter of the main issue that he cannot avoid doing so.

The amendment to Sec. 125, of the Civil Code, was not intended to authorize such cross-actions as these in proceedings in equity. The claims asserted by the cross-plaintiffs against their co-defendants, do not necessarily affect the actions of Terry's executor, and do not owe their existence (if they do exist) exclusively to the work done and performed by the contractor. We do not regard them as the proper subjects for cross-actions, under the circumstances of these cases.

Without expressing an opinion as to the sufficiency in law of either of the cross-petitions, or as to the character of the proof offered to sustain them, we adjudge that their dismission without prejudice does not so injuriously affect the substantial rights of the appellants as to authorize the reversal of the judgments complained of.

Appellants raise no material issue by their pleadings except the two already considered. The judgments against them must, there-

fore, be *affirmed* upon their appeals as to Terry's executors, and also as to the city of Louisville.

*Barr, Goodloe & Humphrey, for appellants.*
*Caruth & Lieber, Y. L. Bunnell, for appellees.*